UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FACTOR KING, LLC** | **CIVIL ACTION** |
| **VERSUS** | |
| **BLOCK BUILDERS, LLC, ET AL.** | **NO.:14-00587-BAJ-RLB** |

### ORDER AND RULING

Before the Court are cross motions for summary judgment filed by Plaintiff Factor King, LLC ("Factor") and Defendant Block Builders, LLC ("Builders")[1]. (Docs. 58, 59). The motions are opposed.[2] (Docs. 61, 62). Oral argument is not necessary. Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons assigned, the motions are **GRANTED IN PART** and **DENIED IN PART.**

**I.   BACKGROUND**[3]

This action arises out of the construction of The District Parking Garage (hereinafter, "Garage") on the real property owned by Defendant Vintala Perkins Road Owner, LLC ("Vintala"). On July 29, 2013, Builders, the general contractor for the Garage, entered into a subcontract agreement with BMP Construction, LLC

---

[1] Although Builders filed the Motion for Summary Judgment, the Court shall construe the Motion as a joint filing by Builders and Defendant Vintala Perkins Road Owner, LLC ("Vintala"). Builders and Vintala share counsel and have filed identical counterclaims against Factor. The arguments advanced by Builders equally implicate the claims and counterclaims relevant to Vintala in this matter. Furthermore, Vintala is a party to the Stipulation of Facts and Agreed Questions of Law (Doc. 57) (hereinafter "Stipulation"), which advances the same arguments set forth in the cross motions for summary judgment.

[2] The parties filed a joint Motion for Extension of Time (Doc. 60), seeking an extension of time to file their oppositions. The Motion for Extension of Time (Doc. 60) is DENIED AS MOOT.

[3] These facts are gleaned from the stipulated facts offered by the parties in the Stipulation. (Doc. 57). Record citations are provided for all facts discussed herein that are not included in the Stipulation.

("BMP"). Under the subcontract, BMP was to perform certain labor and furnish certain materials in connection with the erection, construction, and completion of the Garage. (Doc. 59-3). Article 9.8 of the subcontract provides that BMP would hold the progress payments it received from Builders in a "trust fund to be applied first to the payment of any person furnishing labor materials or services" before BMP used any part of the payments for any other purpose. (*Id*. at 6). Article 9.8 also provides that Builders may, in its discretion, make progress payments in the form of joint checks to BMP and the suppliers. (*Id*.).

On August 20, 2013, BMP entered into a Factoring and Security Agreement with Factor to sell its accounts receivables. Under the Factoring and Security Agreement, BMP sold and assigned its accounts with Builders to Factor for a working capital line of credit. (*See* Doc. 58-3). As discussed below, the sale and assignment included Invoice #6 dated December 31, 2013, and Invoice #7 dated February 6, 2014.

Between September 17, 2013, and December 12, 2013, BMP and Builders jointly entered into Joint Payment Agreements with five[4] of the seven suppliers furnishing labor materials and services to BMP under the subcontract. (Docs. 61-2, 61-3, 61-4, 61-5, and 61-6). The five suppliers included Dolese Bros. Co. ("Dolese"), Commercial Metals Company ("Commercial Metals"), C.A.S. Co., Inc. ("C.A.S."), Garcia's Concrete Contractors ("Garcia's"), and Tech-Con Systems ("Tech-Con"). (*Id*.). The Joint Payment Agreements were form agreements with the same material terms,

---

[4] Builders claims that it also entered into a Joint Payment Agreement with James A. Teague Rental Equipment, but it did not submit summary judgment evidence in support of this claim. (*See* Doc. 61 at p. 4).

2

including the agreement that Builders will: (1) issue joint checks payable to BMP and the supplier; (2) secure BMP's endorsement on the joint checks; and (3) forward the checks directly to the supplier. (*Id.*).

On December 20, 2013, BMP sent a Notice of Assignment to Builders notifying it of the sale and assignment to Factor of all of its accounts then due or to become due in the future. Four days later, on December 24, 2013, Factor also sent a Notice of Assignment to Builders to notify it of the same and to direct Builders to pay all outstanding and future receivables to Factor. Jason Keller, the managing member of Builders, signed the Notice of Assignment acknowledging receipt and returned it to Factor on January 2, 2014.

Invoice #6 was generated on December 31, 2013, in the amount of $404,455.46. After BMP submitted Invoice #6 to Builders, BMP informed Factor that four of its suppliers, Dolese, C.A.S., James A. Teague Rental Equipment ("J.A.T.") and Tech-Con, were owed a total of $184,396.52. Factor purchased Invoice #6 and did not object to Builders paying the suppliers. On February 6, 2014, Builders issued a check made payable to Factor in the amount of $220,058.94, and joint checks made payable to BMP and each of the four suppliers.[5]

Invoice #7 was generated on February 6, 2014, in the amount of $215,077.82. On February 7, 2014, Factor sent a letter (hereinafter the "Invoice Letter") to Builders advising of the invoice and requesting that an authorized representative sign the

---

[5] The joint checks were made in the following amounts to the suppliers: $139,459.00 to Dolese; $12,448.41 to C.A.S.; $11,444.00 to J.A.T.; and $21,045.03 to Tech-Con. The Court notes, however, that the total of the amounts listed in this footnote is $184,396.44, but the total listed above is $184,396.52. All monetary figures were provided by the parties in the stipulated facts, and no direct evidence was provided to the Court to determine the correct total paid to the suppliers.

letter confirming "(i) Invoice(s) will be paid by [Builders] to [Factor] on or before the due date without recoupment, setoff, defense or counterclaim . . . and (ii) terms set forth in the Invoice are correct." (Doc. 58-3 at p. 42). That same day, Builders' Project Manager, Melissa Schultz, approved and signed the Invoice Letter.

Two days later, on February 9, 2014, Builders issued "Change Order No.7," which reduced the subcontract amount by $6,128.43,[6] and reduced Invoice #7 by $19,874.04 for work allegedly not completed on the Garage. Factor and BMP did not agree to the reduction. On February 10, 2014, Builders sent Factor a revised Invoice #7 in the amount of $189,375.35. On March 19, 2014, Builders issued joint checks, totaling $189,375.35, made payable to BMP and seven suppliers, Dolese, C.A.S., J.A.T., Tech-Con, United Rentals, Garcia's and Commercial Metals.[7] Builders did not issue any payment to Factor. On January 16, 2015, Factor, as assignee of BMP, recorded an Affidavit of Lien in the amount of $215,077.82 on Vintala's property with the Mortgage and Conveyance Records Department of the Clerk of Court of East Baton Rouge Parish, Louisiana.

On September 16, 2014, Factor filed this action against Builders alleging breach of contract and detrimental reliance. (Doc. 1). On February 23, 2015, Factor filed an Amended Complaint, adding Vintala as a defendant and alleging three

---

[6] On Builders' subcontractor application for payment, signed by BMP on February 6, 2015, handwritten additions to the "contract change order summary" are noted. (Doc. 58-3 at p. 44). According to the handwritten notations, the subcontract amount was reduced by $6,128.43. (*Id.*). It is unclear whether the handwritten notations were made before or after BMP signed the application for payment.

[7] The joint checks were made in the following amounts to the suppliers: $147,661.98 to Dolese; $14,458.54 to C.A.S.; $6,190.74 to J.A.T.; $427.91 to Tech-Con; $8,846.12 to United Rentals; $11,330.67 to Garcia's; and $459.39 to Commercial Metals.

4

additional claims of wrongful payment, lien foreclosure, and the right to collect on an open account.  (Doc. 34).  Builders filed a counterclaim and third party demand, alleging improper lien against Factor and seeking recoupment from the third party suppliers and BMP.  (Doc. 51).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable

to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## III.  DISCUSSION

### A.  Breach of Contract

The parties jointly submitted to the Court a Stipulation of Facts and Agreed Questions of Law (Doc. 57) (hereinafter "Stipulation"). The parties agree that all claims and defenses not raised in the Stipulation are waived. (Doc. 57 at ¶ 32). In the Stipulation, the parties set forth three disputed issues of fact and questions of law that relate to the breach of contract claim: (1) whether BMP could lawfully assign to Factor the entire amount of Invoice #7, inclusive of the funds due to the suppliers; (2) whether Builders was required to pay BMP's suppliers before paying Factor the amount due on Invoice #7; and (3) whether Builders was entitled to reduce Invoice #7 from $215,077.82 to $189,375.35.

#### i.  Assignment of Invoice #7 and Payment to the Suppliers

Factor argues that the Notices of Assignment and the signed Invoice Letter contractually entitle it to $215,077.82 from Invoice #7. (Doc. 58-1 at p. 10). Conversely, Builders contends that Factor's rights are limited to the terms and

conditions of the subcontract, which required BMP to apply progress payments to its suppliers before using the funds for any other purpose. (Doc. 59-1 at p. 5).

When a party to a contract assigns its rights to an assignee, "the assignee is subrogated to the rights of the assignor against the debtor." La. Civ. Code art. 2642. The rights of the assignee are subject to "all terms of the agreement between the account debtor and assignor and any defense or claim arising from the transaction that gave rise to the contract." La. R.S. § 10:9-404(a)(1). Here, Factor is subject to the subcontract. Article 9.8 of the subcontract explicitly required BMP to hold the progress payments it received from Builders in a trust fund to be applied first to the payment of its supplier and then to any other purpose. The subcontract further permitted Builders, at its discretion, to make progress payments in the form of joint checks payable to BMP and the suppliers.

Factor is also subject to the Joint Payment Agreements. After BMP assigned its accounts receivables to Factor, it jointly entered into Joint Payment Agreements with five suppliers and Builders. The Joint Payment Agreements allowed Builders to secure BMP's endorsement of the joint checks and to forward the endorsed checks directly to the suppliers. As subsequent agreements, the Joint Payment Agreements amount to a modification of Article 9.8 of the subcontract. *Bacas v. Mandot*, 3 Teiss. 324, 327 (La. Ct. App. 1906) ("Parties to a contract may, by subsequent conduct in their mode of dealings with each other under it, modify its terms or waive its conditions, expressly or tacitly."). The modification of Article 9.8 is effective against Factor as the assignee of the subcontract. La. R.S. § 10:9-405(a) ("A modification of .

7

. . an assigned contract is effective against an assignee if made in good faith. The assignee acquires corresponding rights under the modified . . . contract.").

In *Parish National Bank v. Historic Construction, Inc.*, the United States Court of Appeal for the Fifth Circuit considered a factually similar case that involved the assignment of a subcontractor's accounts receivables in exchange for a line of credit. No. 01-30282, 2002 U.S. App. Lexis 29391 (5th Cir. April 23, 2002). The subcontract permitted the contractor to pay the subcontractor's suppliers if the subcontractor did not do so. *Id.* at *2. After the subcontractor assigned its accounts receivables and defaulted on the project, the contractor took over the responsibility of paying the suppliers. *Id.* at *3. The Fifth Circuit concluded that the contractual provision permitting the contractor to pay the suppliers was directly enforceable against the assignee and the assignee was not entitled to the payments made to the suppliers. *Id.* at *4–5.

Similar to *Parish National Bank*, the subcontract between Builders and BMP is enforceable against Factor. Under the subcontract, BMP was not entitled to any funds owed to the suppliers. Rather, BMP was only entitled to the funds that remained after the suppliers were paid. Factor is subrogated to the rights of BMP and cannot recover beyond the amount to which BMP is contractually entitled to collect. Since BMP was only entitled to receive payment after the suppliers were paid, Factor is similarly limited to the funds that remained after the suppliers were paid. Additionally, as a result of the modifications made by the Joint Payment Agreements, Builders was permitted to directly issue the joint checks to the suppliers after securing BMP's endorsement.

The Court's finding is further supported by the parties' conduct in relation to Invoice #6. Under Invoice #6, Builders paid the suppliers before it paid Factor and Factor did not object. Factor contends that it did not object because BMP notified it of the amount owed to the suppliers before Invoice #6 was purchased, but BMP did not provide notice before Invoice #7 was purchased. (Doc. 58-1 at p. 18). Although BMP did not provide notice for Invoice #7, Factor was on notice from the subcontract and the parties' prior dealings. The Factoring and Security Agreement also permitted Factor to directly contact Builders to verify the amount of the account before it purchased the invoice. (Doc. 58-3 at p. 26). Most importantly, however, BMP's failure to provide notice does not confer additional contractual rights unto Factor that were not possessed by BMP. Based on the foregoing, the Court finds that summary judgment is appropriate against Factor on this issue.

### ii. Unilateral Reduction of Invoice #7

The next issue before the Court is whether it was proper for Builders to reduce the amount of Invoice #7 from $215,077.82 to $189,375.35, without consent from BMP or Factor. Builders concedes that it executed the Invoice Letter acknowledging that the "terms set forth in the invoice are correct." (Doc. 61 at p. 5). Nevertheless, Builders contends that it later reviewed Invoice #7 and determined that the amount due was incorrect because BMP did not complete all corresponding work. (*Id.* at 6). Builders reduced the amount of Invoice #7 by $19,874.04, and issued Change Order #7 representing the reduced amount of $189,375.35. (*Id.*)

Article 2769 of the Louisiana Civil Code provides, "[i]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at

9

the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." In the construction context, an "owner should be placed in the position he deserved to be in when the building was completed." *Henderson v. Ayo*, 2011-1605 (La. App. 4 Cir. 6/13/12), 96 So. 3d 641, 645.

It is well settled, however, that "where a contractor sues on a building contract and it is shown that the work delivered is defective or unfinished, the contractor is . . . entitled to recover the contract price if the defendant fails to establish the damages he has sustained by reason of the contractor's partial default." *Lillis v. Anderson*, 21 So. 2d 389, 392 (La. Ct. App. 1945). The owner, or in this case the general contractor, bears the burden of proving the damages caused by the defective or incomplete work. *See Transier v. Barnes Bldg., LLC*, 2014-1256 (La. App. 3 Cir. 6/10/15), 166 So. 3d 1249, 1260 (stating that a builder may "recover the contract price less whatever damages the owner may prove attributable to the breach of contract"); *Maxwell v. Cayse*, 2010-680 (La. App. 3 Cir. 12/8/10), 54 So. 3d 118, 122.

Here, Factor does not dispute Builders' contention that the work was incomplete. However, the Court must decide whether a dispute exist as to the damages caused by the partial performance. To reduce the amount of Invoice #7, Builders must present evidence of the cost to complete the work billed in Invoice #7. *Mount Mariah Baptist Church, Inc. v. Pannell's Associated Elec., Inc.*, 36,361 (La. App. 2 Cir. 12/20/02), 835 So. 2d 880, 888 *writ denied*, 2003-0555 (La. 5/2/03), 842 So. 2d 1101) ("Where [a contractor] presents evidence of the cost of completion of the work or correction of the defective work, the contract price may be reduced by that amount."). Builders has failed to meet this burden. Builders did not submit any

evidence to show that damages were sustained due to partial performance. Without evidence establishing damages, a genuine dispute of material fact does not exist for trial. *See MAPP Const. LLC v. Paragon Steel Servs., Inc.*, No. 3:09-625, 2011 WL 572425, at *4 (M.D. La. Feb. 15, 2011) (granting summary judgment against a contractor that did not submit evidence of its damages). As such, summary judgment is appropriate against Builders on this issue.

## B.     Detrimental Reliance

Factor avers that a promise was created by Builders' agreement to the terms of the Invoice Letter. (Doc. 58-1 at p. 12). Under the Louisiana Civil Code, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code art. 1967. "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59.

As the Court found *supra*, Factor's assignment from BMP was limited by the subcontract, which did not entitle it to the amount owed to the suppliers. Builders did not expressly or implicitly convey a promise to pay Factor money that it was not contractually owed under the assignment.

The Invoice Letter does not amount to a promise to pay Factor more than it was entitled, but constitutes an agreement to pay Factor the amount it was owed under the subcontract. The parties' conduct in relation to Invoice #6 controverts

11

Factor's contention that a promise was created by the Invoice Letter. Under Invoice #6 and Invoice #7, Builders consistently paid the suppliers before it paid Factor. In the absence of a promise, Factor was not in a position to justifiably rely on or change its position. As such, the Court finds that summary judgment is appropriate against Factor on this claim.

### C.   Wrongful Payment

Factor seeks to impose liability on Builders under a wrongful payment theory of recovery for the payments made to the suppliers. (Doc. 58-1 at p. 13). Louisiana Revised Statute § 10:9-406 requires an account debtor, after receiving notice of an assignment, to discharge its obligation by paying the assignee and not the assignor. This case, however, does not involve the wrongful payment to an assignor. As previously noted, Factor was not contractually entitled to the payments made to the suppliers. Thus, Builders' payments to the suppliers were proper and summary judgment is appropriate against Factor on this claim.

### D.   Open Account

Factor contends that an open account exists because BMP sold and delivered certain goods and services to Builder at a stated price. Under Louisiana law, actions on an open account are controlled by La. R.S. § 9:2781, which allows a claimant to recover reasonable attorney fees for the prosecution and collection of an open account claim. An open account is defined as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. § 9:2781(D).

In determining whether a contract falls under the open account statute, courts in Louisiana consider whether the "total cost or price [is] . . . left open or undetermined." *Tri-Par. Elec. Supply, Inc. v. Cypress Bend Investments, LLC*, 2012-787 (La. App. 3 Cir. 12/12/12), 105 So. 3d 1036, 1039 (citation and internal quotation marks omitted); *see also Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 F. App'x 297, 301 (5th Cir. 2011) (concluding that an open account existed because there was an undetermined total). Courts also consider "(1) whether other business transactions between the parties existed; (2) whether one party extended a line of credit to another; (3) whether there are running or current dealings; and (4) whether there are expectations of future dealings." *Tech. Eng'g Consultants, LLC v. Beall*, No. 11-1579, 2012 WL 4141425, at *3 (E.D. La. Sept. 14, 2012) (citing *Paz v. BG Real Estate Services, Inc.*, 921 So. 2d 186, 188 (La. 2005)). However, the open account statute does not require multiple transactions or for parties to anticipate future transactions. *Frey Plumbing Co., Inc. v. Foster*, 2007-1091 (La. 2/26/08), 996 So. 2d 969, 972.

Applying the statute to the facts of this case, the Court finds that an open account did not exist between the parties and Factor is not entitled to reasonable attorney fees. First, Builders and BMP did not engage in other business transactions but entered into a contract for the singular purpose of BMP completing a "Concrete Foundation System, Parking Garage Piers and Foundation, mud slab, and other related work" for the Garage. (Doc. 58-3 at p. 16). Second, the subcontract between Builders and BMP did not include a line of credit, a fluctuating price, or a running account. *Tech. Eng'g Consultants, LLC*, 2012 WL 4141425, at *3 (finding an open

account where the parties contemplated a series of transactions, the price was subject to fluctuation, and the invoices were billed bi-monthly at hourly rates). Rather, Builders and BMP entered into a fixed price contract in the original amount of $825,000. (Doc. 58-3 at p. 6). *See Akers v. Bernhard Mech. Contractors, Inc.*, 48,871 (La. App. 2 Cir. 4/16/14), 137 So. 3d 818, 830 *writ denied*, 2014-1040 (La. 9/12/14), 148 So. 3d 931, *and writ denied*, 2014-1100 (La. 9/12/14), 148 So. 3d 934, *and writ denied*, 2014-1103 (La. 9/12/14), 148 So. 3d 935 (finding that a subcontractor's claim against a general contractor was not an open account because the parties agreed upon a price). Lastly, the record before the Court does not evidence running or current dealings, or an expectation of future dealings.

The Court recognizes that multiple transactions or an anticipation of future dealings is not dispositive of an open account, and that the lack thereof does not preclude the finding of an open account. See *Frey Plumbing Co.*, 996 So. 2d at 972. Nonetheless, when the record is taken as a whole, the Court finds that Factor has failed to demonstrate a dispute of material fact as to the existence of an open account. Accordingly, the Court finds that summary judgment is appropriate against Factor on this claim.

### E.   Improper Lien and Lien Foreclosure

Builders asserts that Factor's lien in the amount of $215,077.82 against the property owned by Vintala is improper because Factor is not entitled to the total

amount of Invoice #7.[8] (Doc. 59-1 at p. 6). The Louisiana Private Works Act ("LPWA") grants contractors, or subcontractors, a privilege on immovable property to secure the price of their work. La. R.S. § 9:4801. Under the LPWA, "an owner or other interested person may require the person who has filed [the lien] . . . to cancel the statement of claim" if the lien has been improperly filed. La. R.S. § 9:4833(A); *Pipes v. Dyna Ten Corp.*, 389 F.3d 488, 490 (5th Cir. 2004). To do so, the person requesting the cancellation of the lien must issue "a written request for cancellation in the manner provided by law directing the recorder of mortgages" to cancel the lien. La. R.S. § 9:4833(A). A lienholder who, "without reasonable cause," refuses to cancel the lien within ten days of receiving the request "shall be liable for damages suffered by the owner or person requesting the [cancellation]." La. R.S. § 9:4833(A), (B); *Pipes*, 839 F.3d at 488.

In its counterclaim, Builders alleges that Factor refused to cancel its lien within ten days after receiving a written request for cancellation from Builders and Vintala. (Doc. 51 at ¶73). However, Builders did not provide any summary judgment evidence to demonstrate that a written request was in fact sent Factor. Without evidence demonstrating that Builders complied with the requirements of § 9:4833(A) of the LPWA, the Court cannot assess whether Factor's failure to cancel the lien was unreasonable.

---

[8] The parties stipulate to the validity and enforceability of the lien, notwithstanding their dispute as to proper amount owed to Factor under Invoice #7. Given the stipulation, the Court will not disturb the lien's validity as to it being filed. The only dispute before the Court is the issue of the amount owed.

Additionally, the Court cannot enforce the lien in the amount of $215,077.82, as requested by Factor. The Court found that Factor is not entitled to the payments made to the suppliers, which reduces Factors' recovery by $189,375.35. Accordingly, the Court cannot enforce the lien as it exists, or render it improper under § 9:4833(A) of the LPWA. Summary judgment is appropriate against Factor for its lien foreclosure claim, and appropriate against Builders for its improper lien claim.

## IV.     CONCLUSION

Based on the foregoing, the Court finds that Factor is entitled to $25,702.47 from Invoice #7, which is $215,077.82 reduced by $189,375.35, the amount due to the suppliers.[9]

Accordingly,

**IT IS ORDERED** that the **Motion for Extension of Time (Doc. 60)** is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Block Builders, LLC's **Motion for Summary Judgment (Doc. 58)** and Factor King, LLC's **Motion for Summary (Doc. 59)** are **GRANTED IN PART** and **DENIED IN PART**, according to the reasons assigned herein.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of Block Builders, LLC, and against Factor King, LLC, for Factor King, LLC's breach of

---

[9] Separate and apart from this Judgment, the Stipulation includes an agreement that Builders is liable to Factor for BMP's retainage in the amount of $55,915.67. (Doc. 57 at p. 7). The parties' agreement amounts to a settlement, which does not necessitate a judgment from the Court.

contract claim, detrimental reliance claim, wrongful payment claim, and open account claim.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of Vintala Perkins Road Owner, LLC,[10] and against Factor King, LLC, for Factor King, LLC's lien foreclosure claim.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of Factor King, LLC, and against Block Builders, LLC and Vintala Perkins Road Owner, LLC, for Block Builders, LLC's and Vintala Perkins Road Owner, LLC's improper lien claim.

**IT IS FURTHER ORDERDED** that **JUDGMENT** is entered in favor of Factor King, LLC, and against Block Builders, LLC, in the amount of $25,702.47, plus pre-judgment judicial interest at the Louisiana state judicial interest rate from September 16, 2014, through the date of the judgment.

Baton Rouge, Louisiana, this 29th day of February, 2016.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[10] *See supra* note 1.